May it please this honorable court, counsel, I'm Robert Gould, counsel along with my colleague Brian Wade for the appellants Bertelsens and their corporation. This interesting matter presents this court with the opportunity to reaffirm yet again Washington's long established jurisprudence that any fee agreement, any relationship between a transaction between a lawyer and a client in violation of the RPCs is to be construed as a matter of law and in the words of our appellate court is deemed prima facie fraudulent. That the courts will not be used as an instrument to enforce agreements between lawyers and clients that are violative of the rules of professional conduct. The respondent in this case and his law firm raised his contingency fee for himself and his lay colleague Mr. McPherson by 50% from the May 29th 2001 contingency agreement to the one of September 19th 2001. From 1% to 1.5%. Yes your honor, 50 basis points. Counsel I'll tell you where I zero in on this case and you can perhaps help me. I'd be pleased to try your honor. Under Washington law in the Kelly case, first of all let's get something straight. You're not seeking damages caused to any of your clients for any of the fiduciary breaches which you claim other than disgorgement of fees paid, true? Partially true. What is partially untrue about my statement? Because it is not damages your honor, rather the jurisprudence of the state of Washington mandates, mandates that agreements made contrary to the rules. Counsel can you answer my question? What damages are you seeking other than disgorgement and tell me what they are? We are seeking disgorgement your honor. Period. Period. Now you're getting back to what counsel should be doing which is answering straightly questions. Thank you your honor. Disgorgement is an equitable remedy, true? Untrue your honor under our jurisprudence. It isn't? It is not your honor. You got a right to jury trial for disgorgement? You do not your honor. I didn't think so. Equitable considerations carry the day with disgorgement do they not? They do not under the facts and law in this case your honor. Under Kelly, the Kelly case, isn't disgorgement a matter of discretion for the trial judge at which he can weigh not only the violation of rules of professional conduct, including in that case it was something that we really don't like which is an attorney for an estate buying some of the estate's property behind the scenes. The jury found $85,000 in damages. And then disgorgement was sought. And the judge said no disgorgement because he did serve the estate. Now my question to you is this. The learner trial judge in this case, why wasn't he within his discretion in saying true, there was a breach of fiduciary duties. But since you're seeking only disgorgement, since the value of the services rendered by the defendant law firm were reasonable, I'm not going to grant you disgorgement. What was wrong with that decision? It violates the law. It is a mixing of apples and oranges and things that are not. It's saying here's your liability, breach of fiduciary duty. Here's the remedy you're seeking which is disgorgement. And I'm applying the remedy in favor of the defendants in this case. What's wrong with that? The reason for that, Your Honor, is Kelly v. Foster was followed by a series of cases, starting with Eriks v. Denver, where the court unanimously said, excuse me, did not unanimously say, I apologize, that any agreements entered into during the period of representation between a lawyer and a client which do not follow RPC, in this case by way of illustration 1.8, are void ab initio. It's much different because of the business transaction between the lawyer and the client. I'm not disputing liability. You've got liability. I'm disputing damages. And damages, pardon me, I'm not disputing, the other side is disputing damages. But what I'm saying is why isn't the judge within his discretion saying, everything you say is true, counsel, but on the other hand, these people did a pretty good job. They got you over $7 million in rental over a 10-year period. They got you a good hunk of money. Maybe it shouldn't have been calculated at 1.5. Maybe it should have been calculated at 1.0. And it should have been calculated in a smaller amount than it was calculated in the amount. Fine. But sort of blurring his eyes a little bit and saying, you got a good deal, you got good services from these people, I'm not going to cause them to discourage any of the fees. What is an abuse of discretion about that? May I try and answer your question specifically on a variety of levels because it raises a variety of issues. Number one, the court did not find, the trial court, a breach of fiduciary duty, one. Number two, this is not specifically damages as we know them in tort law. Rather, this is a void ab initio business agreement between the clients and the lawyer, which mandate under our jurisprudence the disgorgement of the funds. Oh, you think that it's an error of law by the trial judge not to have given you disgorgement. He had no discretion whatsoever to determine that disgorgement was not equitable under the circumstances. Absolutely correct, Your Honor. In Washington jurisprudence, so holds. And if I might cite you a couple of cases, they are Eriks v. Denver. They are Ocean Shores Park v. Sweet, all of which are cited in our brief. The most recent Supreme Court announcement on this subject, Valley Fifth Avenue v. Stewart. And the ratio decedendi, the philosophical underpinning which I submit to you is so important for this, is the fiduciary duty which lawyers have at all times between themselves and their clients. And our courts, I believe in common with the majority of jurisdictions, have held that if a lawyer breaches his fiduciary duty, if a lawyer violates the rules of professional conduct, if the lawyer during the course of representation has a business relationship contrary to 1.8a, contrary to the many other RPCs that were breached in this case, we will not allow the courts, as a matter of philosophy, to be an instrument to reward that wrongdoing. Counsel, I want to just turn the kaleidoscope a little bit. Yes, Your Honor. Focus on the issue of the contract with the consultant. Yes, Your Honor. The fee splitting element of this. Yes. You're familiar with N. Ray Marshall? I am. What distinguishes N. Ray Marshall from this case? Thank you very much for asking that question, Your Honor. There's a big difference. N. Ray Marshall clearly and unequivocally, and I submit to you that was the reason that the Supreme Court went off in the direction that it did, is predating the attorney-client relationship, predating the contingency agreement between the lawyer and the client, the consultant had a contingency fee agreement with the client. Wasn't that true in this case as well? Absolutely not, Your Honor. May I commend Your Honor's attention to the agreements of May 29th, 2001, and September 19th. They were done at the same time. They retained them both, and there was absolutely undisputed fee splitting. Right, and I follow you there. I just want to be sure I understand the record on this. My recollection, which may be faulty on this, is that the gentleman who was the non-lawyer had an ongoing relationship with counsel in this case. Attorney-client relationship among other things. All right. Okay, so the question is, does that bear any relationship to the N. Ray Marshall case? None whatsoever, for a variety of reasons. Okay. Because in our view, that conflict of interest, and there were many, between the defendant lawyer, Harris, and the layperson, McPherson, were not disclosed in writing, and the client did not give a knowing intentional waiver as required by RPC 1.4b. Additionally, and it's undisputed, Your Honor, and the court acknowledges it's familiar with it, the fees came into the law firm. The law firm wrote a check and took a 1099. Were they lying to the IRS or what? And so I think it's important, if I may segue from that point that you make, Your Honor, this is not only an abject violation of RPC 1.8, where the lawyer enters into a fee agreement during the course of the representation, which benefits him, but there's violations of RPC 1.7 as it relates to conflicts, RPC 5.4, sharing of fees. Again, let me just have you address a couple of these questions. Please. The waiver of conflict issue, you've got the, I forget what the family relationship is, but you've got the two initial clients, I guess the husband and wife, and then somebody's mother-in-law, father-in-law, I don't know what it is. Mr. Berthelsen's father and mother, Dr. and Mrs. Berthelsen. They were guarantors at one point. A partial guarantor. Under Washington law, what is the penalty, if you will, for failure to obtain a written, knowing waiver of conflict? As discussed by our expert witness, Professor John Strait, it follows the same thing. Professor Strait opined that that sort of conflict cannot be waived, and most importantly, Your Honor, under the undisputed facts, was not waived. Why do I say that? Sure, I understand that. There's a difference between an actual conflict and a potential conflict. As I understand it, at least when the attorneys here began to represent these folks, it was merely a potential waiver. Is that correct? I don't believe it is correct. Was it actual? It was actual because, as guarantors, the parents had claims that they could proffer for indemnification. So they could be subjugated and come right back. Precisely, Your Honor. Okay. And most importantly, under the facts of this case, which are not disputed, the defendant Harris lawyer did not give any of the clients full disclosure of the effect, and most importantly as well, Your Honor, if I may hasten to add, Jeff and Amy Bertelsen never signed a waiver of conflict of interest. It seems very clear on the record that there was no full disclosure to anybody at any time. I just wanted to be sure I understood under Washington law the actual impact. Judge Bea had inquired before about disgorgement and so on, and I guess I would ask the same question. Putting aside the fee-splitting agreement for a moment, if all we were dealing with here was a failure to have a knowing written waiver of conflict, and you had the facts of this case, what under Washington law would be the outcome of that failure to get a written waiver of disclosure? In my understanding of the law of the state of Washington, and I believe it is very bright line clear, our courts have stated time and time again, we will not be instruments to allow enforcement of contracts that violate public policy and principle, and that conflict of interest violates public policy. I want to again follow up on what Judge Bea raised. The disgorgement issue, of course, that kind of follows from this concept, but if under Washington law an attorney is a fiduciary, let's equate them to a bank officer, and the bank officer does what's accused of self-dealing basically, damages would also flow in addition to disgorgement, would they not? I'm not familiar, and I'm not trying to duck your question. I'm not sure if there is a fiduciary relationship between a bank loan officer and a borrower debtor. We know beyond dispute that there is a fiduciary duty between a lawyer and a client. What I'm trying to explore, counsel, is the nature. A fiduciary duty is the highest level of confidential relationship that you can have. Total agreement. And so if you have that and that is violated, not only in the bankruptcy context, if there's a waiver, if they have a waiver of conflict, all the fees are lost. Sometimes the ones that have already been paid you get disgorgement, but you can also have serious damages. What I'm asking you is under Washington law, whether damages also flow from this situation in addition to disgorgement. They do, as I understand the law. Any case law you can cite us to on that? Not off the top of my head, Your Honor. Okay. I would like, in the brief time remaining so I can reserve a little time, to come to something that I think is important and we stressed in our brief. This trial court, which did not specifically hold there was a breach of fiduciary duty, which it should have, stated in the excerpts of the record, page 486, lines 17 through 22, quote, I do think that there are certainly arguments under the RPCs that the court is aware of in this case, but having to, and I would also note that the practices and forms that were utilized here are certainly not ratified and confirmed by anything the court has herewith said. That is absolutely inconsistent with the result of the court. And may I hasten to add, I believe, and I am mind reading, that the result obtained was as a result of the Tesoro transaction, which has absolutely nothing to do with the fiduciary duty owed by the lawyer to the client. Thank you. Let me just ask you one more thing here. Yes, Your Honor. If this court were persuaded by your multiple arguments, exactly what relief are you seeking? Thank you for asking, Your Honor. I always try to be accommodating. Thank you. That the total amount of fees as discussed in page 23 of our opening brief, $334,915.91, must, under Washington law, be disgorged. So that's the total amount of the fees paid over the total amount of the time, and unlike what Judge Baez suggested, there would be no quantum merit recovery by the attorney under any circumstance. There is not. And that is giving him credit for the $10,000 properly paid under the hourly fee agreement. Under Washington law, that's a liquidated sum entitled to bear interest plus taxable costs. Have I answered your question, Judge? Well, for now. Thank you so much for your attention. Good morning. My name is Pat Rothwell, and in the courtroom today is my client, Roger Harris. I wanted to address a few of the issues that have come up in the preceding argument. First of all, I want to note that in the findings of fact and conclusions trial court, Judge Succo found that the payment on the Tesoro transaction, the $72,500, was reasonable and there was no breach of fiduciary duty or egregious misconduct by Mr. Harris in receiving that payment. Counsel, let me be clear on this. You had an option by Tesoro to receive, I guess the additional was $7.5 million, something of that range. Your client took a contingency fee on the entire amount. Is it not true that under Washington law, contingency fees are to be paid on the amounts as received by the client? In a tort case in which the client is a claimant who is seeking a recovery and the recovery has payments both up front and over time, in that scenario the rule says you can only take their payment over time. So you're saying that the rule applies only in a tort claim situation? That rule only applies to a claimant who is seeking recovery. It's what we call a structured settlement. A structured settlement is an example. It's limited to a structured settlement situation. Do you have any authority for that, Mr. Rothfeld? Only just the reference to the rule itself, the RPC rule that describes what is prohibited. There's a few things that are prohibited with respect to contingency fees. The structured settlement has two facets to it. It can either be one or the other. What it costs the defendant, right? Yes. Or money as received or the present value thereof. Correct. Well, what it costs the defendant here at Tesoro is pretty clear what rent they paid. Well, it wasn't. They weren't. But the Bertelsons were not tort claimants suing Tesoro. No, no, I understand that. But even applying that rule, the lease payments are lease payments. Yes. One of the ways this could have been calculated, and since the September 19, 2001 corporate resolution talked about a percentage of the gross value of any transaction, the question is, well, what's the gross value of this transaction? One of the ways that it could have been calculated is to say, what's the rent that's going to be paid? Roughly $7 million. What's the up-front amount? $1 million. What's going to be left? They still own the stations. But the up-front amount, the $1 million option, was for the purchase, not for the lease. Well, there was $1 million paid up front, and then the preset option prices were $8.5 million. That was a reduction from the lease payments, the $1 million? Well, the $1 million was a separate payment. It was basically an up-front payment. Let me be precise in my question. Was the option payment for an option to purchase, an option to lease, either or both? Both, I believe, yes. Let me just reflect on this. I'm looking at RPC 1.5C4. As I read that, I can see how you can construe it as referring to a structured settlement, but it doesn't say that, and it could be construed as exactly what we have here. There's a contingent fee consisting of a percentage of the monetary amount recovered for a claimant in which all or part of the recovery is to be paid and the future shall be paid only, and so on. Now, under the circumstances here where you have a contingency fee, and obviously your client believed that he was recovering this for the client because that's why he got paid the fee. So why would not this section apply to your client, even though it's not a structured settlement and a tort claim? Well, it wasn't really a recovery of an amount. Well, let me put it this way. He felt he was entitled to the contingency fee, right? Certainly. Right. And so he felt he really was. Which was it for? Well, he got something for the client. It was a recovery. It was a result of some kind. Is he relying on some other statute or some other basis for having a contingency fee that's not covered by 1.5? Well, I guess the response is that unless there is a rule that the trial court finds was violated, then there is no basis for the trial court, or there's certainly no abuse of discretion for the trial court to deny fee disgorgement. Understand here, we're construing a law, and we're in a court of appeal. Whatever the trial court did, we're looking at the law here, and I'm trying to understand why this particular section does not apply to this transaction. Well, no, it's not a structured settlement. I understand. And I would go back to my position that this applies to a tort claim, and this was not a tort claim. Do you have any case law that substantiates your position? No Washington case law. Okay, so I'm reading the statute, you're reading the statute, I'm a judge, you're an attorney. So I guess I get to decide what it means, right? You're correct. The question, though, becomes, I think, Your Honor, don't mean to cut you off, the question becomes did this trial court abuse its discretion when considering all the alleged violations of the RPCs? Well, is that the standard when we're construing the law? I know that's the case when we're talking about the facts, but what about the law? Aren't we reviewing the law de novo? Well, I think the issue of whether this trial court, whether you could reverse this trial court and say there was abuse of discretion, you have to take into account both the alleged violations of the RPC along with all the other factors that go into the fee. I understand that, counsel. What I'm trying to get you to address is the standard of review that we have here. I understand your point about the standard of review for factual determinations is abuse of discretion. However, when we're talking about construction of law, is that not a de novo review on our part? Well, as to factual issues, I think it's clear that the standard is clear error. But the issue in this case is did the plaintiffs prove up their breach of fiduciary duty claim, which was based upon I'm not answering my question with all due respect. When we're looking at the law, is that not de novo review? The underlying law, I would agree, is a de novo review. Okay. So whatever the trial court did with this law, if, hypothetically, if we disagree with the trial court's construction of the law, we don't have to be concerned about what the trial court did with the law, do we? Well, you still have to decide whether the trial court, considering all the factors of use of discretion in denying the fee forfeiture. And I'm following what Judge Smith says. And I think it might be easier if you just agree that we have to interpret 1.5C4 as a matter of law de novo, based on what Washington law is. Isn't that correct? Yes.  That's all I was looking for. Okay. Getting back to the Marshall case, which was brought up, this was the 2007 decision from the Washington Supreme Court, where the non-lawyer had actually entered into an agreement to represent certain claimants for 10% fee. Now, I frankly don't understand how he could do that as a non-lawyer, but apparently he had some ability to do that. Let's assume for just a moment, and forgive me for interrupting you, Counsel. Sure. My quaint view of oral argument is that your job is to answer our questions, because we've come here already having read the cases and read the briefs, and we know what you say. We just want to understand those issues that we are unclear about. So forgive me for interrupting your presentation. Under Ward v. Richardson-Rosano, wasn't the modification of the September agreement faulty? Did it meet those standards? Well, the trial court made findings with respect to the Ward standards. I'm not asking what the trial court said. I want to know from your reading of the law whether the Ward case was complied with. Yes. The undue influence part. Right. What advice, independent advice, did the plaintiffs in this case, what advice did they get from an independent attorney as to the reasonableness of increasing the fee from 1% to 1.5% on the eve of the transaction closing? Well, first of all, it wasn't quite at the eve as the trial court found. Second, as the trial court found, the May agreement had expired. There was no agreement in place. The plaintiffs here saw it. Doesn't the very language, though, refer to the earlier agreement? It's a new corporate resolution in September. Okay. But, I mean, the reality is it piggybacked on the other one. Many of its terms were contained in the earlier agreement. That's true. The earlier one was void. It has, in effect, incorporated it by reference, hasn't it? Well, it was very similar in its wording with the exception of the percentage. But could you understand the September change without referring back to the original May document? It could have been. Could it have been a contract? Excuse me? Could it have been a contract without that provision, without May? In other words, did it have all the four elements of a contract in it? Yes, I believe it did because the May contract had expired. It wasn't in existence. What I'm saying is that when you look at the September document, can you make a contract out of that without referencing the May document? Yes. Originally it had 1%. Then you're going to have 1.5%. But a what? And how did all that work? I guess what I'm struggling with is how do you basically take the May agreement and throw it into outer darkness and rely exclusively on the September agreement as if it was the only contract? Well, I think the way the trial court determines it. And I'm not interested in that. I want to know from your perspective, in compliance with the Ward case, how does this work? As the trial court found, there was no payment pursuant to the May agreement. The remedy in this case is a fee disgorgement. So you look at where did the fee arise? Where did it come from? It was the September agreement. The May agreement had already expired. There was no payment pursuant to the May agreement. When the trial court was listening to the facts, it determined that the Ward factors had been met because by September, everyone knew that the May agreement had expired, and the plaintiffs testified at court that they knew they had the opportunity if they wanted to. So the court specifically made a finding that there was no undue influence here? Yes. The court found that there was no undue influence, that all the Ward factors had been met. May I ask you a question that you've answered? Mr. Gould indicated to me that there were a series of cases in Washington following Kelly v. Roberts that said that where there was a violation of RPC, it was mandatory to disgorge attorney's fees. Now, I'm reading Kelly v. Roberts, and it says just the opposite. Such a ruling is well within the court's discretion and will not be overturned. Now, that's no longer good law, according to Mr. Gould. So I'd like you to address that. There is no case law that Mr. Gould has cited that says that once a trial court finds that there is a single RPC violation, if they do, that that mandates that the entire fee be disgorged, that there's no such jurisprudence. And it makes good sense, if I could give an example. Suppose the clients come in to the lawyer. Well, Kelly v. Roberts is good sense. Well, certainly. But as an illustration of how a trial court could interpret this and why the trial court needs to exercise its discretion in determining whether there's an egregious misconduct. What about Ross v. Scannell? Ross v. Scannell is the predecessor to Kelly v. Foster. And in Kelly v. Foster, they quote from Ross when the court in Kelly says that the standard is egregious misconduct. Okay. So the question then here is whether there was egregious misconduct, right? Yes. Ross is still good law. Yes. Ross and Kelly. Okay. Still good law. But the issue here is if the conduct is egregious enough, then there is no basis for quantum merit. If it's not so bad, then you can get quantum merit. Well, it's not so much quantum merit is the issue. The issue is fee disgorgement in the first place. A trial court could presumably say there has been a violation. But in effect, counsel, the court is trying to make some kind of an evaluation under your theory of the case as to what is an appropriate, reasonable fee. And that's a quantum merit analysis, is it not? I mean, dollars are fungible. Whether you get to keep some, you have to give it back, then get it back, or whatever, they're still fungible. Is that the case? Certainly when the judge exercises discretion, it's going to take into account not only the RPC violation that's alleged, but also what was the work done, how many hours went into it, what's the reasonable value. That all has to be taken into account. I just found that getting him a $7 million lease was worth $142,000. Essentially. With all the factors that went into the value, the judge said that this was a reasonable fee. What about the fee splitting context? If you find that this was an illegal fee splitting, was the agreement not void ab initio? Well, this void issue comes up. What we're dealing with is a breach of fiduciary duty, and we're dealing with alleged violations of the RPC. This was not an action by Mr. Harris to sue on a contract in which the former clients, the Bertelsons, asserted voidness as an affirmative defense to a contract. We have to focus on what the claim is. It's a breach of fiduciary duty. We focus on the RPC violations. This idea of whether it's void or not might make sense if it were a contract issue, but it's not a contract issue. As the trial court found... So you're saying that the agreement between your client and the Bertelsons was not a contract. Is that what you're saying? No, there was a contract between... And the contract called for a fee splitting arrangement with a non-lawyer. No, I don't believe that's true. Well, first of all, it didn't call for a splitting of attorney fees. The RPC that's at issue talks not about fees but attorney fees. Was there a splitting of attorney fees? Is there anything in the contract that defines what portion is going to be attorney fees and what portion is going to be non-attorney fees? Well, what the contract and the context of the contract is that the parties all knew that Mr. McPherson was the consultant. His hourly rate was going to be $150. It's set out in the September contract. Mr. Harris would be the attorney. Does it say anywhere in the agreement that the gentleman, the consultant, was not an attorney? It doesn't say that, but as the trial court found, the Bertelsons knew he wasn't an attorney, knew he was not going to do the legal work, that Mr. Harris was going to do the legal work. I understand. And under Washington law, that's sufficient? Well, I think you have to give the trial court's findings a fact after listening to this case for a week. Unless there's clear error, then this court must accept those. I guess what I'm troubled about is, I admit, I come from California. Maybe our jurisprudence is different. I don't know. But in California, attorneys have a very high level of fiduciary duty. And if there is error, failure to disclose, if there is a failure to disclose, the attorney loses, period. I gather you're telling me that is not true under Washington law. Well, it depends on what you're talking about. If you're talking about a tort claim, with respect to a fee disgorgement claim, the question is, did the attorney breach the provision, did he breach his fiduciary duty, and if so, with all the factors that went into the work and the result, should a portion or all of the fee be disgorged? Now, we're not talking about whether there's negligence per se, based on some type of breach of fiduciary duty, because that wasn't the theory. The theory was simply fee disgorgement. Let's assume, again, just arguendo, I don't want to alarm you, but let's assume, arguendo, that this court were to conclude that there was, in fact, a violation of Washington law. And it doesn't seem like the court got very far in this. What would be the appropriate remedy to send the case back to the district court with instructions to determine, based upon the breach of fiduciary duty, what the appropriate fee is? Is that what you'd be looking for? Well, I think the trial judge has already done that. The trial judge, number one, found there was no breach of fiduciary duty. I understand, but let's say hypothetically that we do find that. Okay. The trial judge said, even if there was a breach of fiduciary duty, there was not sufficient egregious misconduct to warrant a fee penalty. So from your perspective, there would be no basis for sending anything back to the district court. If we found that the district court was just wrong, you would just want us to make our own determination about the appropriate award or lack thereof. Well, no, I think the trial judge has already taken that into account. We seem to be confusing jurisdiction here. We're the court of appeal. They're the trial court. If we say that the trial court was in error, in good faith, undoubtedly, fine, judge. But if we say the trial court was in error, I'm asking you, if we send it back, are you saying that you don't want us to send it back to have the trial court take a new look at this with our instruction about how the law should have been applied? Or on the contrary, are you saying we'd like the court of appeal to make the determination of what, in dollars and cents, what the award or disgorgement or whatever should be? What are you looking for? Well, given the fact that this judge found in my client's favor, my preference would be if this court were to find that on a legal issue there was an erroneous interpretation that it would be remanded back to this trial court to then decide, with that erroneous determination, whether there's any reason to disgorge all or a portion of the fee. All right. I appreciate that answer. Well, didn't the trial court assume a violation? Well, as I mentioned earlier in my argument, the trial court found there was no breach of fiduciary duty. But assume that there was. It went further and assumed even if there was, there would be no disgorgement applying whatever reasons he gave. It wasn't sufficiently egregious in light of all the circumstances. So if we find that he was wrong in saying there was no breach of fiduciary duty, to send it back to him would amount to nothing but a meaningless exercise, wouldn't it, since he's already found what the damages are or the remedy should be? I would hope so. It would be remanded back to him and he'd consider his alleged erroneous interpretation and then decide whether or not. Well, he assumed that there was a violation. He assumed that and then made a finding of what the remedy would be, assuming that, correct? Well, just slightly different, I think. He found there was no breach. But if there was, if there was. Assuming there was. Then there wasn't sufficiently egregious in light of all the circumstances to warrant a fee forfeiture. And one final thing, Your Honors, is that there was a statute of limitations issue as well that the trial court found in favor of my client. That is, the breach of fiduciary duty claim has a three-year statute of limitations. The trial court determined as a factual matter that the plaintiffs knew of all the circumstances of the fee payment arising out of the star transaction and had an opportunity to object if they wanted. They knew all the factors more than three years before they filed this complaint so that, in his interpretation, the breach of fiduciary duty claim, if it did exist, was barred by the statute of limitations. Thank you, Your Honor. My time is up. Mr. Gould, would you address that last statute of limitations issue? I'd be pleased to, Your Honor, and I thank you. It's been addressed by the case of Ocean Shores Park cited in our brief. The decision is at paragraph 25 through 27 of the decision, page 913, 914. Quote, The statute of limitations does not apply where an act or instrument is void at its inception. Well, it's on your contention that the 2001 September agreement was void ab initio. Absolutely, because of its violation of RPC 1.8. Your Honor, I'd like to pick up on a number of points that this panel raised with my able colleague. Ward and Valley 50th Avenue, and the most recent pronouncement by the Supreme Court is Valley 50th Avenue, is that the courts will not be used. We don't even get to quantum merit. Quantum merit is not mentioned here except in questioning by the court. Discouragement is not quantum merit. I couldn't agree more. But I suggest to Your Honor a reading of the trial court's decision showed that it arrived at its decision by an exercise not found in the agreement and by engaging in quantum merit in trying to determine the Tesoro transaction. But if the trial court evaluated the egregiousness of the conduct under Ross v. Scannell, would he not, under Washington law, have been able to find an award of attorney fees notwithstanding the breach of fiduciary duty under quantum merit analysis? Your Honor must understand, if I may, that Ross v. Scannell, there had not been a fleshing out of the findings and what happened. As contradistinct from the later cases where our court has said clearly and unequivocally, it is void ab initio. We will not be used as an instrument to be used to enforce an agreement that violates our mandates and the rules of professional conduct. So, Ross v. Scannell really isn't good law anymore if you have a factual circumstance where the contract that was the basis of the payment of fees was void ab initio. Fair statement. Thank you. I'd like to briefly come back, and I don't have much time, but I commend your attention to Kelly v. the recent Shoemake v. Farrar case that we cited as new authority that was decided by the Court of Appeals on Monday. Kelly was seeking an award of attorney's fees for the breach of fiduciary duty. Shoemake v. Farrar, Court of Appeals, which we have cited to you, says that you do not get an award of attorney's fees even if there's been a breach of fiduciary duty. But... What's that site again, please? I'll be happy to give it to you. It's Shoemake, S-H-O-E-M-A-K-E v. Farrar. S-H-O-E-M-A-K-E v. what? Farrar, F-E-R-R-E-R. We have submitted supplemental... A site? It came down on Monday. I can only give you... You have a Westlaw site or something? It's too recent, Your Honor. Is it a Washington Court of Appeals case? It is. Division 1, docket number 60158-0, decided this last Monday. And lastly, it stands for a proposition, and I am analogizing, but I commend it to your attention, that lawyers who breach their fiduciary duty are not entitled to set off their contingent fee. They can't benefit from their contingent fee in the follow-on legal malpractice case, which I believe is supportive to the main premise that is before this panel. And so I commend it to your attention. I believe my time has regrettably expired. Again, I thank you all for your attention. Thank you, counsel. Thanks, both of you, for a very interesting presentation. The case of Berthelsen v. Harris will stand submitted. And we will go to the next case on the calendar.
judges: Bea, Smith, Hood